IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WEST AMERICAN INSURANCE COMPANY
and PEERLESS INDEMNITY INSURANCE
COMPANY,

      Plaintiffs,

v.                                                      No: 1:17-cv-01047-RB-LF

HAILEY ATYANI, NICHOLE C DE BACA,
BIANCA GARCIA, HANNAH JIRON, CESELLA
MERRYMAN, ANDREA VARELA, WHITNEY
WHITSON, JAEDA CHAVEZ, JENNA ESPINOZA,
SAMANTHA HAWLEY, KRISTEN HERRERA,
EMILLEE JEPHSON, GENEVIEVE REILLY,
KELSI SHARP, ALLYNA BOWSHER, DENNIS
BONFANTINE, JANICE BONFANTINE,
D.B. KELLY, INC., d/b/a KELLY'S BREW PUB
AND RESTAURANT and DB BREWERY LLC,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Dennis Bonfantine, Janice Bonfantine, D.B. Kelly, Inc., d/b/a Kelly's Brew Pub and Restaurant and DB Brewery LLC's (collectively, "the Kelly's Defendants") Motion to Dismiss. (Doc. 15.)[1] Jurisdiction arises under 28 U.S.C. § 1332. The Kelly's Defendants and Plaintiffs West American Insurance Company and Peerless Indemnity Insurance Company (collectively, "Plaintiffs") dispute whether several insurance policies require Plaintiffs to indemnify and cover defense costs in two state court actions. These underlying actions involve former employees who allege the Kelly's Defendants violated the City of Albuquerque Minimum Wage Ordinance ("MWO"). The Kelly's Defendants urge the Court to decline to exercise its jurisdiction here because facts relevant to the scope of insurance

---

[1] The Kelly's Defendants filed a Corrected Motion to Dismiss (Doc. 26), which supplements the initial Motion to Dismiss (Doc. 15) with a complete version of Exhibit A.

coverage have yet to be developed in the pending state court case. But Plaintiffs are not parties to the pending state case, and the issue of insurance coverage has not been addressed in that case. Having considered counsel's submissions and the five *Mhoon* factors laid out by the Tenth Circuit to determine when a federal court should exercise its jurisdiction in claims for declaratory relief, the Court will **DENY** the motion to dismiss.

## BACKGROUND

In April 2016, former employees of Kelly's Brew Pub sued the Kelly's Defendants in state court, alleging that the defendants had been violating the MWO by withholding servers' earned tip money, not paying servers the tipped minimum wage, and failing to keep required payroll records. (*See* Doc. 1 (Plaintiffs' Complaint) ¶¶ 37, 39–45.) That case—*Atyani v. Bonfantine*—is currently pending in the Second Judicial District Court, Bernalillo County, New Mexico. *See* D-202-CV-2016-02775. In February 2017, a different former employee filed a similar suit against the Kelly's Defendants alleging similar violations of the MWO. *See Frank v. Bonfantine*, D-202-CV-2017-00852. In November 2017, the state court dismissed *Frank* with prejudice. *Id.*, Stipulated Order Granting Dismissal with Prejudice (2nd Judicial Dist., Bernalillo Cty., N.M. Nov. 13, 2017).

Plaintiffs issued various insurance policies to DB Brewery LLC d/b/a Kelly's Brew Pub, and the policies were in effect during the period when the alleged MWO violations occurred. (*See* Compl. ¶¶ 32–34.) The policies cover bodily injury and property damage if the injury or damage "is caused by an 'occurrence' that takes place in the 'coverage territory.'" (*Id.* ¶ 36.) The policies specifically exclude bodily injury and property damage that is "expected or intended from the standpoint of the insured." (*Id.*) The policies define an "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

(*Id.*) "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." (*Id.*) The Kelly's Defendants sought defense costs and indemnity under these policies to resolve the claims against them in *Frank* and *Atyani*. (*Id.* ¶ 51; Doc. 13-1, Ex. A.) Plaintiffs denied coverage in both cases on the basis that the allegations of wage withholding and other MWO violations involve neither bodily injury nor property damage and are otherwise excluded from policy coverage. (*See* Compl. ¶¶ 52, 57–61.)

The Kelly's Defendants argue that resolution of certain factual disputes in *Atyani*—e.g., whether the alleged tip withholding occurred at all or occurred intentionally—could resolve so that the underlying action would fall within the scope of the policies' property damage coverage. (*See* Doc. 15 at 4–5.) The bulk of the Kelly's Defendants' Motion to Dismiss (*see id.* at 4–6) and Reply in Support of Motion to Dismiss (*see* Doc. 42 at 5–9) reiterates their argument that this Court should decline to issue a declaratory judgment regarding coverage before the state court case has more fully developed the facts in dispute.

## DISCUSSION

The Declaratory Judgment Act vests federal courts with the power to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. The Supreme Court has repeatedly affirmed the discretionary and "nonobligatory nature" of declaratory relief. *See, e.g., Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–88 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."); *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952) ("[The Act] confers a discretion on the courts rather than an absolute right upon the litigant.")

While declaratory relief is clearly discretionary, the Tenth Circuit has expressly emphasized the utility of such relief in insurance coverage disputes. *See W. Cas. & Surety Co. v. Teel*, 391 F.2d 764, 766 (10th Cir. 1968) ("[A] declaratory action by an insurer to establish nonliability under casualty insurance [is] one of the prime purposes of the Declaratory Judgment Act."); *Farmers All. Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978) ("We have expressly recognized that one of the primary functions of the Act is to provide the [insurer] such a forum." (citation omitted)).

When a parallel state court action might address some or all of the coverage issues presented in a federal claim for declaratory relief, courts in the Tenth Circuit look to the five factors laid out in *State Farm Fire & Casualty Co. v. Mhoon* to determine which forum would best settle the controversy. *See* 31 F.3d 979, 983 (10th Cir. 1994). The factors include:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* These factors are balanced to guide the court's analysis—no one factor is dispositive. *See United States v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002). Here, an analysis of the *Mhoon* factors suggests that the Court should exercise its jurisdiction and deny the Kelly's Defendants' Motion to Dismiss.

**First and Second *Mhoon* Factors: Settling the Controversy and Clarifying Legal Relations**

The degree of similarity between the federal declaratory judgment proceeding and the underlying state court proceeding is relevant to the analysis of each *Mhoon* factor. The first and second factors, in particular, "are necessarily driven by the degree of identity of parties and

issues in the concurrent proceedings." *See id*. "[T]he likelihood a declaratory judgment will resolve the immediate dispute between the parties may tip the scales in favor of exercising jurisdiction[,] . . . [while] the existence of outstanding claims in a parallel state court action may counsel a different conclusion." *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 982 n.3 (10th Cir. 2012). Whether a court's analysis of these factors should focus on just the controversy between the federal parties or consider additional parties to the state suit depends on the particular facts of each case, but it may be "[e]specially relevant . . . whether the state court action would necessarily resolve the issues in the declaratory judgment action." *See id.*

Here, though the Kelly's Defendants claim the fact development in *Atyani* will bear directly on the scope of their liability coverage, a resolution of the claims in *Atyani* alone will not and cannot resolve the present coverage dispute because Plaintiffs are not parties to the state case. (*See* Doc. 26-1, Ex. A.) Further, the scope and extent of coverage is not addressed nor pleaded in *Atyani*, (*see id.*), so a second proceeding in either state or federal court would be necessary to determine liability coverage even if *Atyani* resolves some relevant issues of fact. *See Mhoon*, 31 F.3d at 984 (noting that jurisdiction was proper in part because both parties "concede that a suit like this one would have been required at some point in some case other than the state tort action").

A judgment here would immediately clarify the legal relations between Plaintiffs and the Kelly's Defendants and resolve their liability coverage dispute, a dispute that will not be addressed at all in *Atyani*. Thus, the fact that the state court action will not resolve the coverage controversy means the first two *Mhoon* factors weigh strongly in favor of exercising jurisdiction.

5

**Third *Mhoon* Factor: Procedural Fencing**

The third *Mhoon* factor asks whether the party seeking declaratory relief has done so with an improper purpose or to "race to res judicata." *See* 31 F.3d at 983. This factor weighs against exercising declaratory relief when the timing of the federal claim suggests that its main purpose is to delay the state court action or receive a favorable judgment on an issue before the state court has a chance to fully develop the facts. *See St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995) (finding a bad-faith attempt at procedural gamesmanship when the plaintiff filed the federal action one day before the defendant had promised to file his state action, and both claims involved coverage under the insurance contract).

Here, the Kelly's Defendants argue that Plaintiffs engaged in procedural fencing "because the Underlying Action was already pending at the time Plaintiffs' Complaint was filed." (*See* Doc. 15 at 5.) But the order and timing of filing alone is not enough to show procedural fencing—some allegation of improper use of timing or procedure to manipulate the courts is required. In *Mhoon* itself, for example, the plaintiff did not bring its claim for federal declaratory relief until the underlying state tort case was "quite far along," yet the court did not find a procedural fencing issue. *See* 31 F.3d at 982, 984. Here, it is again relevant that the Plaintiffs are not parties to *Atyani* and that *Atyani* does not address insurance liability or coverage issues. There is no evidence that Plaintiffs are using the federal claim to avoid a negative outcome in the state case, and a general assertion that Plaintiffs are trying to avoid further fact development does not rise to the level of procedural fencing. The third factor leans in favor of exercising jurisdiction.

**Fourth and Fifth *Mhoon* Factors: Friction between State and Federal Courts, Encroaching on State Courts' Domain, and More Effective Alternative Remedies**

The final *Mhoon* factors are concerned with whether a declaratory judgment in federal court would prevent the state court from determining the same issue or lead to friction between two conflicting resolutions of the same dispute. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) ("It would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."). But this does not foreclose federal resolution of a factual dispute also pending in state court when there is "a live need for a declaration of [the insurer's] rights and duties" and no suggestion by either party that the insurer "was, or could have been made, a party to the state tort action." *See Mhoon*, 31 F.3d at 983–84; *see also Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1271 (10th Cir. 1989) (holding that a district court did not abuse its discretion in interpreting the coverage limits of an insurance policy in a declaratory judgment action, even though that dispute was pending in a different lawsuit).

Here, determining whether the insurance policies for bodily harm and property damage cover the Kelly's Defendants' alleged actions in *Atyani* and *Frank* will not create unnecessary friction with the state courts nor encroach on their ability to develop the facts in *Atyani*. The Kelly's Defendants argue that a factual determination that they did not intend to steal tips from their servers will mean the actions are not excluded from policy coverage as "expected or intended" property damage. (*See* Doc. 15 at 4–5.) However, the defendants fail to note that there are *other* policy defenses that may allow the Court to determine whether the alleged actions underlying the complaint are excluded from coverage as a matter of law.

Plaintiffs argue that the alleged MWO violations, in addition to potentially falling under various coverage exclusions, "do not arise out of an 'occurrence' causing either 'bodily injury'

7

or 'property damage' as required under the Policies in order to afford coverage." (*See* Doc. 19 at 4.) Even if some of the facts regarding alleged MWO violations in *Atyani* overlap with the determination of policy coverage, it is extremely unlikely that the Court's interpretation of contractual terms in the liability policies—terms such as "occurrence" and "personal property"—will cause friction with the state court or prevent it from determining whether the defendants violated the city ordinance. Furthermore, the *Frank* case has been resolved, so the Kelly's Defendants' demand for defense costs and indemnification in that case cannot be resolved without an additional proceeding.

The Kelly's Defendants state generally that "the declaratory judgment dispute should be heard in the Underlying Action because facts will be developed which will bring the allegations . . . within the coverage of the insurance policies provided by Plaintiffs." (*See* Doc. 42 at 5.) However, though the defendants have now brought a counterclaim against Plaintiffs in this action for breach of contract, (*see* Doc. 50), the fact remains that insurance coverage is not in dispute in *Atyani* and Plaintiffs are not parties to that case.

Finally, the Kelly's Defendants assert that New Mexico law bars fact-based determinations of insurance coverage in federal declaratory judgment actions. (*See* Doc. 15 at 5.) The defendants rely on language in *Lopez v. New Mexico Public Schools Insurance Authority* to argue that fact-dependent coverage disputes may only be resolved in the underlying state action, but a closer look reveals that this is true only when "the alleged facts tend to show an occurrence within the coverage." 870 P.2d 745, 748 (N.M. 1994) (quoting *Found. Reserve Ins. Co. v. Mullenix*, 642 P.2d 604, 605 (N.M. 1982) (citation omitted)).

In *Lopez*, the New Mexico Supreme Court upheld part of a declaratory judgment that some elements of the underlying complaint were clearly excluded from coverage, while

requiring the insurer to defend others that were less clear and better resolved in the lower court. *See* 870 P.2d at 748. Similarly, in *State Farm Fire & Casualty Co. v. Ruiz*, the court held that the underlying state action was better suited to determine whether an ambiguous injury claim resulted from covered negligence or excluded intentional abuse. *See* 36 F. Supp. 2d 1308, 1312 (D.N.M. 1999). However, the court noted that in such cases the complaint must actually "state facts that suggest the case falls within the policy's coverage; abstract and completely unsubstantiated allegations will not do." *Id.* (quoting *Mhoon*, 31 F.3d at 985 (citations omitted)).

In short, there is no rigid requirement that all coverage disputes that turn on disputed facts must be determined in an underlying state court action, and this is particularly true when coverage issues are not even addressed in the underlying action. The claims and defenses in *Atyani* never explicitly or implicitly address the Kelly's Defendants' insurance coverage, nor describe the alleged MWO violations in terms that would clearly suggest or tend to show property damage falling under Plaintiffs' policies. (*See* Doc. 50–1, Ex. A.) Thus, federal declaratory relief is the most efficient and logical way to settle the present coverage dispute and will not conflict with any subsequent fact development in the underlying *Atyani* case. Each of the *Mhoon* factors weighs in favor of this Court exercising its jurisdiction under 28 U.S.C. § 2201.

**THEREFORE**,

**IT IS ORDERED** that Defendants Dennis Bonfantine, Janice Bonfantine, D.B. Kelly, Inc., d/b/a Kelly's Brew Pub and Restaurant and DB Brewery LLC's Motion to Dismiss (Doc. 15) is **DENIED**.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**